Township of Fairview, Appellant *v.* John K. Saxe, Appellee.

Argued December 16, 1982, before Judges Rogers, Williams, Jr. and MacPhail, sitting as a panel of three.

*Howard K. Goldstein,* with him *Frank W. Mulderig,* for appellant.

*Joseph R. Ferdinand,* with him *Robert J. Gillespie, Jr., Bigelow, Gillespie & Cooper,* for appellee.

Opinion by Judge MacPhail, March 28, 1983:

On July 1, 1980 the Board of Supervisors of Fairview Township (Township) brought the following charges against John K. Saxe (Respondent):

1. On March 9, 1978, you signed an affidavit asserting under oath that since February 13, 1978, you had not been involved as a shareholder, principal, partner or employee, in any private business providing guard or detective services, and that on February 13, 1978, American Security, Inc., of which you had been President and chief shareholder, ceased to function as a business.

2. On July 24, 1978, you signed an affidavit, under oath, in which you identified yourself as the President of American Security Service, Inc.

3. On September 20, 1978, you signed an affidavit, under oath as an official representative of American Security Service, Inc.

The statements made by you as outlined above contradict each other, therefore, one or more of the statements made under oath must have been false, and in violation of Section 4903 of the Pennsylvania Crimes Code.

4. On or about August 18, 1978, you filed a claim with the Erie Insurance Group, and received payment of $921.84 for damages to your 1973 Pontiac automobile. The insurance on that vehicle had expired on January 29, 1978. You failed to repay the money to the insurance company when it was demanded and did not contest their legal action, filed to No. 1166 C of 1980, or contradict the allegations in their complaint, and a default judgment was taken against you.

We are told in the Township's brief that a resolution was adopted dismissing the Respondent on the basis of those charges. The resolution is not a part of the record before us. The dismissal was upheld following a hearing held by two of the supervisors constituting a Hearing Board (Board).

Following a timely appeal, the trial court reversed the Board's order and reinstated Respondent to his position on the police force and ordered that he receive all back-pay and emoluments of that position from July 1, 1980. Exceptions to the trial court's order were timely filed by the petitioning Township. The trial court dismissed the Township's exceptions and affirmed its decision.

It is well settled that the burden was upon the Township to prove with substantial evidence the charges against Respondent. It is also well settled that where the trial court receives no additional evidence, our scope of review is to determine whether the facts necessary to support the Board's adjudication are supported by substantial evidence, whether an error of law was committed or rules of procedure were violated, and whether constitutional rights were infringed upon. 2 Pa. C. S. §704.

In his appeal to the trial court, Respondent contended that his constitutional rights were violated and that there was not substantial evidence of record to make out the charges against him. The trial court reversed the Board on the ground that there was no substantial evidence of record to support the Board's adjudication.[1]

For all practical purposes, the only evidence presented by the Township was documentary in nature. Respondent's affidavit of March 9, 1978 is the key to the first 3 charges. That affidavit states:

John Saxe, being duly sworn doth swear and aver that from 1973 to February 1978 he was President and Chief Shareholder of American Security, Inc., a Pennsylvania Corporation; that said Corporation had offices at 36 Carlisle

---

[1] The Board's adjudication contained no findings of fact and no conclusions of law. At the conclusion of the hearing, the Board's chairman announced that the charges against the Respondent were substantiated.

Street, Wilkes-Barre, Pennsylvania, Kirby Avenue, Mountaintop, Pennsylvania, and thereafter, United Penn Bank Building, Wilkes-Barre, Pennsylvania; that since August 1, 1977 no new customers have been undertaken by American Security, Inc.; that on February 13, 1978 the United Penn Bank Office was closed and American Security, Inc. ceased to function as a business; that John Saxe is not now nor has he been since February 13, 1978 involved as shareholder, principal, partner or employee in any private business providing guard or detective services; that American Security, Inc. is not now nor will it in the future be involved in provision of Guard or Detective services.

On July 24, 1978, Respondent signed, as president of American Security, Inc. (American), an affidavit to a complaint in assumpsit by American against Luzerne Outwear Manufacturing Company alleging that the defendant was indebted to American for services rendered from October 1977 to February 1978. On September 20, 1978 Respondent signed an affidavit to a reply and answer to counterclaim filed in the same assumpsit suit by American, verifying that the facts set forth in that pleading were correct.

Township argues that Respondent was guilty of violating Section 4903 of the Crimes Code, 18 Pa. C. S. §4903[2] because one or the other of the aforementioned affidavits was false.

_____

[2] Section 4903 provides in pertinent part:

(a) *False swearing in official matters.*—A person who makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of such a statement previously made, when he does not believe the statement to be true is guilty of a misdemeaner of the second degree if:

(1) the falsification occurs in an official proceeding; or

(2) the falsification is intended to mislead a public servant in performing his official function.

Comparing the affidavit of March 1978 with those attached to the civil pleadings, they may, at first blush, appear to be inconsistent. Upon closer analysis, however, it will be observed that Respondent's March affidavit said that American ceased to function as a business on February 13, 1978. Nothing in the later affidavits contradicts that fact. The March affidavit also avers that from 1973 to February 1978, Respondent was the President and chief shareholder of American. Nothing in the later affidavits contradicts those facts. The real problem with the March affidavit is that Respondent swore in March that he had not been involved since February 13, 1978 as shareholder, principal, partner or employee in any private business providing guard or detective services whereas he executed the July affidavit as President of American. Looking at the civil proceedings, however, we see no allegation or inference therefrom that American was *then* providing guard or detective services; rather the claim is for past services, specifically, services rendered *to* February, 1978. It is obvious to us that even if American was no longer in business, it had the right to collect for services rendered in the past and to do so by litigation if that was necessary. In short, there is no evidence that Respondent provided detective or guard service in a private business capacity after February 13, 1978. As a result, we agree with the trial court and find no contradiction in these affidavits. Respondent cannot be punished for pursuing his legal remedies to collect fees in arrears to American for services rendered prior to February 13, 1978.

Nothing in the record before us, moreover, indicates that criminal charges for violation of Section 4903 have been brought, much less that there has been any conviction for such charges. One of the principal elements of the crime is that it must be proved that the one charged did not believe the sworn statement

was true at the time he made it. We see no proof of that essential fact in the record before us.

We affirm the trial judge's conclusion that there is not substantial evidence to support the charges relating to false swearing.

We turn now to the default judgment arising out of the receipt by Respondent of an insurance check for an automobile damage claim. The facts are not in dispute. There was an accident; Respondent submitted a claim; the insurance claim was paid; the car was repaired; the repair bill was paid; the insurance company then notified Respondent that his policy had been cancelled and demanded re-payment of their check; the Respondent could not repay the money; a civil suit was instituted; and a default judgment was taken against Respondent.

The Township contends in its brief to us that Respondent's failure to comply with Pennsylvania's compulsory motor vehicle insurance law[3] constituted conduct unbecoming to a police officer. The specific charge, however, simply recites a series of events without any specification to Respondent how those events affected Respondent's services as a police officer. While there is certainly substantial evidence to support the factual allegations in the "charge", the issue is, assuming all of those facts to be true, do they amount to grounds for dismissing the officer? Nothing is said in the specific charge about violating the compulsory insurance law, nothing is said about how a default judgment constitutes conduct unbecoming a police officer. As we noted, the principal evidence in support of the charges was documentary, the only testimonial evidence being that of the solicitor for the Township. Respondent testified without contradiction that he did not receive notice that his insurance had

---

[3] Section 104 of the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. §1009.104.

been cancelled and that his legal counsel advised him to permit the default judgment to be taken as a cost-saving procedure.

Again, we must agree with the trial judge that there is no substantial evidence to prove that the events relating to the accident claim affected the morale or efficiency of the Township's police department or that such conduct had a tendency to destroy public respect for the employees of the Township or its confidence in the operation of the police department.[4] As such, Respondent's actions did not constitute conduct unbecoming an officer as defined by our Supreme Court. *See Zeber Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825 (1959).

As stated *In Re: Appeal of Redo,* 42 Pa. Commonwealth Ct. 468, 476-477, 401 A.2d 394, 398 (1979):

[L]inking our own scope of review to the scope of review applicable to the lower court, we here review the question of law of whether the facts found by the court constitute just cause for dismissal and the question of whether the court abused its discretion by modifying the Board's exercise of its initial discretion to decide whether, under the circumstances, the penalty of dismissal should have been imposed. (Emphasis omitted.)

A careful review of the record has disclosed that just cause did not exist for Respondent's dismissal on this

---

[4] Section 2 of the Police Tenure Act, Act of June 15, 1951, P.L. 586, 53 P.S. §812 provides in relevant part:

No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, with the exception of policemen appointed for a probationary period of one year or less, shall be . . . removed . . . except for the following reasons: . . . (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer. . . .

basis and that the trial court did not abuse its discretion by reversing the Board.

Order affirmed.

ORDER

It is ordered that the order of the Luzerne County Court of Common Pleas dated February 1, 1982, dismissing the exceptions of the Township of Fairview and affirming the trial judge's decision restoring John K. Saxe to his position as a member of the Police Department of Fairview Township from July 1, 1980, and ordering that he receive all back pay, benefits and other emoluments of said position that are due him, is hereby affirmed.